# COURT OF ERRORS AND APPEALS.

~~~~~~~~~~~~~

Between CHARLES H. HOLMES, appellant, and the MAYOR AND COMMON COUNCIL OF JERSEY CITY, respondents.

A road will become a public highway, or a laid out road, within the meaning of the statute, either when it has been laid out pursuant to the directions of the act, or where it has been used over twenty years as a highway, or where it has been laid out and dedicated to public use as a highway by the owner of the soil, and accepted or ratified as a highway by the township or city in which it lies.

An individual cannot, at his pleasure, create public highways for his own benefit upon his own land, and impose upon the public the burthen of maintaining them, or constitute them public highways within the meaning of the road act.

To bring a road within the control of the surveyors of the highways, it must be such as can be deemed a laid out road within the meaning of the road act; but a road more than four rods wide exceeds the limits prescribed by law, and cannot either be laid out by the surveyors, nor accepted by the township as a public highway.

The road act confers upon the surveyors the power either to widen or narrow a public road.

The mere fact of dedication by map and survey, and by opening a street as laid out by the owner of the soil, will not constitute such street a public highway until the same has been in some way accepted or ratified by public authority.

A bill to restrain a municipal corporation, in the exercise of its powers, from regulating a street, and putting the curb-stones on a proposed line, and which does not show any irreparable injury, but rests upon the ground that the city is not putting the curb-stones on the true line, by which the complainant will be put to expense, and his property be of less value, contains no recognised ground of equitable relief.

———

This was an appeal from an order of the Chancellor dissolving an injunction. The case appears in the opinion delivered.

The Chancellor furnished to the court the following opinion.

WILLIAMSON, C. In the year 1835, Cornelius Van Vorst laid out a large tract of land, adjoining Jersey City, in the county of Hudson, into building lots. Streets were run through at convenient distances, and public squares laid out on a map designating the property. Among other streets, one called Grand street was designated on the map, and delineated as a street eighty feet wide. This map was filed in the county clerk's office in the year 1847. These streets are now actually open. The larger portion of them have been paved, graded, curbed, and guttered, with reference to their width, as designated on the Van Vorst map. Grand street has been opened and used of the width of eighty feet, and actually built upon on that line. It does not appear, however, by the bill, or in any other way in this suit, that any of the streets were actually opened or worked, or any buildings erected, or any lots sold by Cornelius Van Vorst, previous to the month of April, in the year 1850. In that month, Cornelius Van Vorst conveyed to the complainant four lots of land on Grand street. This tract of land is now within the boundaries of Jersey City, and the streets and sidewalks are under the municipal regulations of the city. In November, 1852, the complainant caused the street in front of his lots to be curbed and guttered with reference to the street, as eighty feet wide. About December, 1851, the defendants (the Common Council of Jersey City) caused Barron street, which intersects Grand street, to be paved, curbed, and guttered, and when they turned the curb at the intersection of these streets in front of the complainant's lots, his lots being on the corner of the two streets, they ran it on a line, assuming Grand street to be eighty feet wide, and assessed the complainant's lots to pay for the work; and the complainant did actually pay for it. Lately the defendants have passed an ordinance directing

Grand street to be curbed, paved, and guttered of the width of sixty feet. Upon these facts appearing by the bill, an injunction was granted to prevent the defendants from taking up the curb and pavement of the complainant, and conforming it to a sixty feet street.

The defendants have answered the bill, and upon their answer here moved a dissolution of the injunction. The answer does not materially vary the facts of the case, as the bill states them; but, in addition to those facts, the answer sets up, by way of defence and justification, that, in November, 1846, by virtue of certain proceedings in the Inferior Court of Common Pleas of the county of Hudson, under the act entitled, "An act concerning roads," a part of Grand street, as it was laid out by Van Vorst, was so vacated and altered as to be made to conform to the width of sixty feet, instead of eighty feet, and that the defendants, by their ordinance, are regulating the street in conformity to this alteration so made by law.

If it is proper, on this motion, to give the defendants the benefit of this defence, and if the court and surveyors had jurisdiction over the matter in question—that is, if under the act entitled, "An act concerning roads," a part of Grand street could be narrowed from eighty feet to sixty feet wide—then this injunction must be dissolved.

As far as the defendants and the public are interested in this matter, judging from the case as it has been presented, and the circumstances connected with it, it would not be unsatisfactory to any party in interest or to the public if this court could, with a proper regard for the law, make this injunction perpetual, and thus establish Grand street as eighty feet in width. A glance at the map which is exhibited will show the alteration to be a great blemish to the beauty of the street. It makes the street of two widths. A part of it, and a smaller part of it, and not at either end, it makes sixty feet wide, while it leaves the street at both ends eighty feet wide.

To the motion for dissolution it is objected, that the

defence set up is new matter, and that, as to new matter, the rule is, it will not avail the defendant on a motion to dissolve.

The general rule is, that where the answer admits the equity of the bill, but sets up new matter as a defence or in avoidance of the equity, the injunction will not be dissolved. *Minturn* v. *Seymour,* 4 *J. C. Rep.* 497; *Allen* v. *Crocroft, Barnard's Ch. Rep.* 373; 3 *Daniel's Ch. Prac.* 1896–7, *notes* 1, 2.

But this rule has its exceptions, and I think a very prominent one is the following: where the complainant, when he files his bill, has full knowledge of the matter of defence upon which the defendant relies, and it is the substantial matter in controversy between the parties, the complainant cannot, by purposely keeping that out of view in stating his case, and in order to deprive the defendant of the benefit of a denial, subject his adversary to the application of the rule in question. And further, the rule has lost very much of its application from the consideration of the change in the practice of the court upon the hearing of motions for dissolution of injunctions. It is one of the rules of this court, that on a motion to dissolve an injunction, the complainant is at liberty to read affidavits in reply to any new matter set up in the answer, and upon which the defendant in any manner relies for the success of his motion. It is true the court ought not to try the case as upon a final hearing on a motion of this kind; but if the defendant sets up new matter, which, if true, constitutes beyond doubt a good defence, the defendant should have the benefit of it, unless the complainant shows to the court that the facts upon which it is founded are controverted, or some reason why it should not avail the defendant on the motion. For instance, the defendant sets up a release of a character to avoid all the complainant's equity. If there is no controversy about the release, except as to its legal operation, there can be no good reason why the court should

not, on a preliminary motion to dissolve, determine its legal construction and application. Take the case in hand as an illustration. Admit that the fact of the alteration of the street by surveyors under the road act to be new matter, the facts upon which the defence is set up, and not denied, the only question is as to the jurisdiction of the Court of Common Pleas of Hudson and the surveyors over the matter. Now the legality of the proceedings and construction of the statute have been as fully argued as they would be on the final hearing of the cause. The defence was no surprise to the complainant; he was aware of it when he filed his bill. If the defence is a good one, there is no reason why the defendants should not now have the benefit of it to relieve them from this injunction.

If, then, this is new matter, such as the general rule contemplates, I do not think the rule should be applied in this case. But I do not think the defence can be justly regarded in the light of new matter, such as it was ever contemplated that the rule, as laid down, should embrace. The bill charges the defendants with unlawfully exercising their municipal authority in regulating Grand street. The defendants admit they are regulating the street, and they set up and show their legal authority for doing it.

The question remains—is their defence a good one? Had the surveyors legal authority, under the act concerning roads, to alter the width of the street? If they had no such right, this court may interfere by injunction, and protect a party who is about to be injured against any act under their proceedings.

It is insisted that there is no authority given by the act to alter the width of a public road or street, and that when the act speaks of *vacating* and *altering* a public road, it means to shut up the road *in toto* from either extremity, or from one point in the line of the road to another point in it, or to vary the *course* of the road.

The second section of the act declares, that when ten

or more persons, being freeholders, shall think a public road necessary, or any public road which hath been or shall be laid out unnecessary, *or any alteration in such road necessary* in any part of the county in which they reside, it shall be lawful, &c. The act then provides for the appointment of six surveyors, and their meeting, and then declares they " shall view the premises; and may if they shall think it necessary, lay out, vacate, or alter the said public or private road, and lay the same as may appear to them to be most for the public and private convenience."

This language is, I think, broad enough to confer the power either to *widen* or *narrow* a public road, provided the road shall not be more than four, nor less than two rods wide, as is provided by the first section of the act. And I can see no reason to doubt, from the language used, or in looking at all the various provisions of the road act, but that such an alteration of a public road was in the mind of the law maker at the time the law was made. I believe that this construction has always been given to the road act. I know the authority has frequently been exercised, and without its propriety being questioned. Certainly no good reason can be given why such a power should not have been conferred. The propriety and necessity of such power being lodged somewhere is manifest, and the proper tribunal is that to which is confided the power, in the language of the act, to lay out, vacate, or alter " the public roads of the state."

It is also contended, on behalf of the complainant, that this street comes within the exclusion of the thirty-fourth section of the act, and that the court and surveyors had no jurisdiction because this was a street *in a town.*

This section declares " that nothing in this act contained shall be construed to extend to narrowing, widening, or altering any street in any of the cities, towns, or villages in this state, or to pulling down or removing any dwelling house, market house, or other public building heretofore constructed, and which may encroach on any highway."

---

Holmes *v.* Jersey City.

---

In giving a construction to this section of the act, some difficulty may occur in defining what the act means by a *town* and *village*. The word town is not here used as synonymous with township. The whole state is divided into counties, and the counties subdivided into townships, so that if we construe town to mean the township, the whole act would be defeated. It was obviously the intention of the legislature to protect the established streets in the settled towns and villages of the state from the operation of the act.

Certainly no one can contend for a more liberal definition of the term *town* than that of a collection of two or more inhabited dwelling houses. The mere fact of fifty or a hundred acres of land being mapped out into streets and building lots cannot make a town. Although the complainant's counsel argued his case upon the assumption that this was a town, such a case is not made out by his pleadings. He does not allege that at the time the street was altered there was any town. It does not appear, by the case, that there was then a single dwelling erected, or an individual living upon the premises. If the complainant was entitled to the benefit of this section of the act, he should have framed his bill accordingly. He knew the ground upon which the defendants justified the action of which he complained, and should have shown, by his bill, that the public act under which the defendants set up their right and authority is not applicable to the case.

The injunction must be dissolved with costs.

The case was argued by

*I. W. Scudder,* for appellants.

*R. D. McClelland,* for respondents.

The opinion of the court was delivered by

GREEN, C. J. The case turns upon the question, whether, at the point in controversy, the legal width of

2 o*

Grand street is sixty or eighty feet. The case made by the bill is, that the street was originally laid out and dedicated to public use by Cornelius Van Vorst, eighty feet in width; that the complainant, who purchased under Van Vorst, is entitled to the use of the entire street as dedicated; that since the dedication, a purchaser of part of the premises originally included in Van Vorst's map, adjoining Grand street, as dedicated by him, caused a new map of the premises to be made, changing the name of the street to Bright street, and reducing its width, through a portion of its length, to sixty feet, and that the city authorities are proceeding to curb and improve the street at its reduced width of sixty feet, made without authority of law and in violation of the contract implied in the act of dedication. By their answer, the city authorities deny that they have sought, by any proceedings adopted by them, to change the width of Grand street; but they set up by way of defence, that the width of the street was reduced from eighty to sixty feet by the surveyors of the highways, duly appointed for that purpose by the Court of Common Pleas of the county of Hudson.

The whole question resolves itself in an inquiry touching the validity of the action of the surveyors. Had the surveyors authority, under the laws of this state, to alter the width of the street?

I concur entirely in the view of the Chancellor upon both of the points discussed and decided in his opinion, *viz.* (1) that the road act confers upon the surveyors the power either to widen or narrow a public road; (2) that upon the facts disclosed in the bill, the road was not within a town or village, and did not, therefore, fall within the prohibition of the thirty-fourth section of the act.

But another and more serious difficulty is urged upon the attention of this court, which does not seem to have been presented to the Chancellor, *viz.* that the road in question had never been laid out, and was not a public

road within the intent and meaning of the act concerning roads at the time it was attempted to be altered by surveyors under the authority of that act.

In the year 1835, Cornelius Van Vorst, being the owner of a tract of land in the then township of Bergen, caused a map of it to be made, and the land laid out into public streets, docks, and lots, including, among others, the street in question. In 1847, he caused the said map to be filed in the clerk's office of the county of Hudson. In the year 1846, the street in question was altered by the surveyors. The bill avers that this map was considered by Van Vorst as a dedication of the streets therein delineated to public use, and that it has been so regarded by the public generally, and that the greater part of Grand street has been opened and used by the public to the width of eighty feet. The answer states, that at the time of the making of the said map, and for many years subsequently, the lands therein described, including the squares and public streets so laid out, continued to be occupied by Van Vorst and others for farming and gardening purposes; that the streets were from time to time partially opened, and that for about ten years after the making of the map, the property included in the farm remained enclosed as a farm, except a very few parts of streets that were opened as aforesaid. It does not appear affirmatively, either from the bill or answer, that the street in question had been opened or used by the public as a street prior to the time of its alteration by the surveyors of the highways. If the street had been merely laid out on paper as an act of dedication, and had never been opened or used by the public, it will not be contended that the road was laid out within the meaning of the act. But admitting that the road had been opened · and used by the public, was it accepted by the township, or in any way ratified as a public highway? It is not insisted that, to constitute a laid out road within the meaning of the act, it must have been laid out according to

the directions of the statute. A road, it is conceded, may be a laid out road within the meaning of the act, and may be a public highway, either where it has been laid out pursuant to the directions of the act, or where it has been used over twenty years as a highway, when the presumption of its being a highway will arise, or where it has been laid out and dedicated to public use as a highway by the owner of the soil, and accepted or ratified as a highway by the township or city in which it lies. An individual cannot, at his pleasure, create public highways for his own benefit upon his own land, and impose upon the public the burthen of maintaining them. The fact, that Mr. Van Vorst created a city upon paper, or that he laid out and opened numerous streets, which were actually used as ways by those living upon them, or by others as matter of convenience, did not and could not impose upon the township the burthen of repairing those streets, or subject it to liability by reason of their being out of repair. They were neither "laid out" nor "highways", within the meaning of the road act, until ratified by the township. And even though, by the act of dedication or from lapse of time, the individual should be estopped from denying the public right of way, it would not thereby be constituted a highway within the meaning of the act.

In *Underwood* v. *Stuyvesant*, 19 *Johns. R.* 186, Platt, J., delivering the opinion of the court, said—" The original survey and map show that Petrus Stuyvesant formed a plan for laying out streets over his land in 1796, but we must intend that every person knew that those streets could not be established as public streets of the city, unless they were sanctioned by the corporation or other public agents having such powers. The plan was considered as a proposition, which the corporation would undoubtedly adopt and sanction as the city gradually extended." It is true that, by an act of the legislature, no streets in the city of New York laid out by individuals could be established as public streets until they were ap-

proved and accepted by the corporation; and so it is believed many of our city charters or ordinances contain a similar provision. The design of such enactments is to prevent highways being foisted upon the public by implied acts of recognition or acceptance. But I think it clear that, independent of all express legislation upon the point, an individual cannot, in this state at least, by opening a road upon his own land, burthen the public with maintaining and repairing it, or constitute it a public highway within the meaning of the road act. The public were at liberty to accept this dedication, in whole or in part, or utterly to disregard it. It did not interfere with the right of the public to lay highways across this land to suit the public conveniences. A public highway was in fact, as appears by the case, long after this dedication, constructed across this land, in total disregard of the street, as dedicated. The mere fact of dedication by map and survey, and the opening the streets as laid out, did not constitute them public highways until such street was in some way accepted and ratified by public authority.

Nor can it be urged that the acceptance by the public, or the existence of a highway, will be presumed from the action of the court in the appointment of surveyors. The question is, whether the township in which the road lies had accepted it as a public highway; and it is clear that there could have been by law no such acceptance at the time the surveyors were appointed. No highway laid out in this state since the act of 1799 (*Pat.* 387) can be more than four rods wide. Now, to bring this road within the control of the surveyors of the highways, it must be deemed a laid out road within the meaning of the act. But this road, until the surveyors narrowed it, was more than four rods wide. Such a road could neither be laid out by the surveyors, nor could it be accepted by the township as a public highway. It exceeded the limits prescribed by law. I am of opinion, therefore, that the pro-

ceedings of surveyors appointed by the Common Pleas altering the width of Grand street, as originally dedicated and opened, were null and void, and that the street, until altered by competent authority, must be deemed and taken to be eighty feet wide. I come the less reluctantly to this conclusion, seeing that this whole subject is now under the control of the city council, and that they may, in pursuance of their charter, alter this street as the public good may require, or as they in their wisdom may deem meet.

The decree of the Chancellor should be reversed, and the injunction continued without costs.

I have with some reluctance expressed an opinion upon the merits of the case, and with much difficulty assented to the conclusion that there is in this bill any ground of equitable relief. It is a bill to restrain a municipal corporation, in the exercise of its powers, from regulating a street and setting the curbstones on a proposed line. I find in it no recognised ground of equitable relief. There is no averment of irreparable injury, and the case made by the bill shows that, in the nature of things, the injury cannot be irreparable. There is no charge of fraud —nothing, in short, but the fact, that the city is not setting the curbstones on the true line, by which the complainant will be put to expense, and his property, as he alleges, be of less value. And the point upon which the whole case turns is a mere question of law. I do not see why, upon the broad frame of this bill, every act of a municipal corporation by which the property of a citizen is affected, whether it be the opening, paving, or grading of streets, the regulation of buildings, the removal of nuisances, or the assessment of taxes, may not be the subject of injunction, and the legal right be drawn in question in a court of equity. The courts of New York appear to have denied the jurisdiction of equity in a much stronger case. And the fact, that in this case the city has been enjoined for five years against proceeding

Holmes *v.* Jersey City.

with a public improvement, shows that the practice may occasion serious practical evils and embarrassment in the administration of municipal affairs. I make these suggestions that I may not be regarded as maintaining the propriety of the practice. But as this question does not appear to be raised by the respondents upon their answer, or upon argument before the Chancellor, and as it seems clearly for the interest of both parties that the legal question in controversy should be after so long controversy definitely settled, I concur in maintaining the jurisdiction, and deciding the case upon the merits.

*For affirmance*—None.

*For reversal*—CHIEF JUSTICE, Judges ARROWSMITH, HAINES, POTTS, VALENTINE, CORNELISON, SWAIN, RISLEY, VREDENBURGH, OGDEN, RYERSON, WOOD.